# CASES

# SUPREME JUDICIAL COURT,

## COUNTY OF YORK, APRIL TERM, 1841.

## SAMUEL DONNELL *versus* THEODORE CLARK.

In an action of trespass *quare clausum*, the defendant justified the trespass by setting up two rights by prescription — first, a right to depasture the beach adjoining the plaintiff's land, and secondly, that the plaintiff should fence against his cattle so depasturing — and it appearing that the beach had been used from time immemorial by the public for a highway — proof that the defendant, and those under whom he derived his title, have been accustomed to turn their cattle on their own pasture, and there being no fence on the sea-side, that they have been accustomed to run on the beach generally, and upon that part which adjoins the plaintiff's land, is not of that adverse and marked character, to establish by prescription a right to depasture on said beach — and, the right to depasture on said beach failing, the incidental and attendant right to require the plaintiff to fence against his cattle so on the beach, must likewise fail.

If the right prescribed for is not injurious to the rights of another, it lays no foundation for a prescription. It is only long continued and adverse enjoyment, which affords evidence of prescription.

THIS was an action of trespass *quare clausum.*

The general issue was pleaded. The defendant further filed a brief statement, in which he alleged that — at the time the several trespasses alleged in the plaintiff's writ are supposed to have been committed — he was the owner of a certain farm and pasture situated in Wells and bounded on the south by the sea, and that there is a certain portion of sea-beach adjoining said Clark's pasture and the close of the plain-

tiff, called Drake's Island — and he, the said Clark, and those under whom he claims said farm and pasture, have been accustomed from time whereof the memory of man runneth not to the contrary, to depasture horses and neat cattle in his said pasture and to have them run on said beach to the sea and near to and adjoining the plaintiff's close called Drake's island, and that the plaintiff, and those under whom he claims, have been accustomed from time whereof the memory of man runneth not to the contrary, whenever they have cultivated and improved said close, called Drake's island to fence it against horses and neat cattle running in said pasture and upon said beach, and that the same may be fenced with little expense and without infringing the right of the public to pass on said beach : — but that said Clark's pasture cannot be fenced without great and unreasonable expense, and without infringing the rights of the public to pass through the same into said beach through two certain roads which the public have been accustomed to use from time whereof the n emory of man runneth not to the contrary, subject only to the gates and bars now and at the time when, &c. erected and standing on said roads — and at the time, when the supposed trespasses are alleged to have been committed, his, the said Clark's, horses and neat cattle were rightfully and lawfully on his said pasture adjoining the sea, and on said beach, and that they wandered on said beach a short distance opposite the plaintiff's said close, called Drake's island, and were there rightfully on said adjoining beach, and the plaintiff's said close not being enclosed with a legal and sufficient fence, the said Clark's horses and neat cattle went upon the close of the plaintiff, at the times when, &c. from said adjoining beach where they righfully were, which is all the trespass complained of, &c.

The defendant then read the following deeds. Deed from William Hammond, dated Feb. 26, 1667, conveying to William Symonds "a piece of sea-wall, beginning at that sea-wall which is already his own, and so as to run to the upland, called Drake's island, and so by the sea, which is about four or five acres, be it more or less." — Deed from Simon Epes and

Donnell *v.* Clark.

wife, dated Aug. 5, 1717, conveying to Nathaniel Clark "one half part of a farm in Wells, in the county of York, that was our grandfather's, Mr. William Symonds, formerly of Wells, deceased, the whole farm containing, by estimation, about three hundred acres of upland, marsh and meadow ground, be the same more or less, bounded southerly and westerly by Gooch's island, and upon the sea-wall and Little river southeasterly and northeasterly, together with all the appurtenances." — Also, deed from Joseph Jacobs, Phillips Fowler and Susanna Fowler, of a quarter part of the same farm, dated July 17, 1717 ; — also, a deed from Nathaniel Clark to Adam Clark, dated March 31, 1762, conveying the Symonds farm, with certain reservations, immaterial in this case ; — also, a deed from Adam Clark to Benaiah Clark, father of the defendant, and of whom the defendant is sole heir, dated Jan. 20, 1802, conveying "all my home lot of land lying in Wells, adjoining to land belonging to Nathan Wells, and also to land belonging to Dependance Wells, containing in the whole 150 acres, including upland and salt marsh, together with my dwellinghouse and other buildings."

It was proved on the part of the defendant, that his pasture, adjoining the beach, had not been fenced on the side towards the sea ; and that his cattle and horses went at large on the beach freely, and have at sundry times been seen on the beach opposite Drake's island — that Drake's island had generally been fenced — It was also testified by witnesses that they had seen no other person's cattle going at large on the beach — that a gate had always been kept up on a road leading through Clark's pasture to the beach — that beach grass grew on the sea-wall in front of Clark's and Well's land and on the southwest corner of Drake's island.

It is further proved by a number of witnesses, and by several owners of Drake's island prior to the plaintiff — that the owners of that island had fenced against the sea, and kept it so fenced, and that while they so owned it Clark's cattle and horses run on the beach by Drake's island, and that no others run there, except Clark's, without objection.

Dependance Wells testified that he had known Clark's pasture and Drake's island fifty years — had known nine different families beside the plaintiff's on the island — that they kept up a fence when they improved the island, and that cattle and horses of the defendant and his father run on the beach from their pasture at all seasons of the year, and he never heard any objections to it — that he never saw any cattle at large on the beach but Clark's—that his father-in-law owned it fifteen years and kept up a fence.

On the part of the plaintiff it was proved, that he was the owner and in possession of Drake's island, bounded southeasterly by the beach; that the defendant's horses entered from the beach as stated in the defendant's brief statement — that a tract owned by Ivory Wells intervened between Drake's island and Clark's pasture, bounded in the manner described — that the beach had from time immemorial been used by the public to pass and re-pass — that it is reported to have been the post road from Portsmouth to Portland, but that it has not been used as such for a long time — that of late years it had been constantly used by the inhabitants of Wells and adjoining towns in hauling sea weed, drift wood, &c. and for carriages, fowling, fishing, &c. on both sides of Harbor river, four miles east, and about six miles west of said river; that the road through Clark's pasture had also been freely used from time immemorial by all persons having occasion to go on to the beach, but that the gate had been constantly kept up and was opened and shut by those passing through it — that this road through Clark's pasture was the only road from Kennebunk to the wharves on Drake's island where coasters discharge their cargoes, and the only road, excepting at low water when teams passed down the bed of the river to the wharves — that Benaiah Clark had assisted in hauling drift wood from the beach opposite his pasture, without asserting any claim to the same; and that on building the pier, large quantities of stone were hauled from the same place, Clark assisting with his team and making no claim to the stone — that a fence at the time of the

alleged trespass, was standing forty rods on the front or seaside of Drake's island, beginning at Ivory Wells' land, and that the defendant's horses entered southerly of said fence. There is no other highway to the beach between Little river, the boundary between Wells and Kennebunk and Harbor river, except the ways through Clark's pasture, both of which are entered at the same gate.

It appeared from the testimony adduced by the plaintiff, that the island has been fenced for thirty or forty years — that the beach has been used by all persons with perfect freedom from one end to the other ; that there is no sea-wall in front of the island, but the upland begins at the beach.

There has been no division of the fence according to law between Clark's and Wells' land, or between Wells' land and the *locus in quo*.

The defendants contended that although the public had a right to pass over the beach for certain purposes, it was not a public highway, and that the right to pass through Clark's pasture was a qualified right, subject to an obligation to shut the gate at all times.'

On the foregoing facts, a default was entered by consent, judgment to be for eighteen dollars twenty-five cents and costs, if the plaintiff is entitled to recover — otherwise a nonsuit is to be entered.

*N. D. Appleton* and *D. Goodenow,* for the defendant. The evidence shows that the defendants' cattle have run from time immemorial on the beach — and the plaintiff, or those whose right he has, have always fenced against the defendant's cattle so running. The deed of the defendant's farm extends to low water mark. *Storer* v. *Freeman,* 6 Mass. R. 435 ; Anc. Char. 1661. By sea-wall is meant here the lower edge of the beach. *Nickerson* v. *Crawford,* 16 Maine R. 245 ; *Cutts* v. *Hussey,* 15 Maine R. 237. The cattle of the defendant have exclusively run on this beach. This is shown unequivocally by the testimony. 2 *Stark. Ev.* 664. To every prescription time is essential. *Thomas* v. *Marshfield,* 13 Pick. 240. The

right claimed is the proper subject of prescription.  *Rust* v.
*Low*, 6 Mass. R. 90 ; *Little* v. *Lathrop*, 5 Greenl. 356 ;
Dane's Abr. c. 79, art. 3, 1.   It is adverse and long continued.
*Hoffman* v. *Savage*, 15 Mass. R. 130 ; *Comstock v. Van
Deusen*, 5 Pick. 163.

The *locus in quo* is not a highway, nor common, within St.
1834, c. 157.   The rights of the defendant are not inconsist-
ent with those of the public.   As a highway it has been dis-
continued.   It is not a common.   No road is proved to have
ever been located.   The rights of the public are the same on
the beach as through the pasture.

So far as the parties in this case are concerned, the rights
of the public are immaterial.   The plaintiff cannot invoke the
aid of the statute — as the defendant's cattle were rightfully on
the adjoining land — and the plaintiff was bound to fence
against them.   Besides, the provisions of the statute do not
apply, because here the plaintiff was bound by prescription to
fence.   *Carter* v. *Murcot*, 4 Burr. 2162 ; *Commonwealth* v.
*Charlestown*, 1 Pick. 180 ;   *Adams* v. *Emerson*, 6 Pick. 57 ;
*Olinda* v. *Lathrop*, 21 Pick. 292 ;   *Cortelyou* v. *Van Brundt*,
2 Johns. 357 ; Angel on Tide Waters, 90 ;   2 Bl. Com. 263.
The case of *Thomas* v. *Marshfield*, 13 Pick. 240, having been
decided upon a different state of facts, is inapplicable.

If both parties own to low water mark, then the defendant
has a right to permit his cattle to run there — and the same
obligation to fence, exists on the part of the plaintiff.

*Bourne* and *Shepley*, for the plaintiff. — The defendant re-
sists the plaintiff's claim by a double prescription — one for his
cattle and horses to run on the beach near to and adjoining
the plaintiff's land — the other for the plaintiff to fence against
his cattle on the beach.

The jury are the proper tribunal to establish the question of
prescription.   1 Dane, 26, c. 2, 23 ; *Gray* v. *Bond*, 2 B. & B.
667 ; *Gayetty* v. *Bethune*, 14 Mass. R. 55 ; *Hill* v. *Crosby*,
2 Pick. 467.

If the Court were to determine the question of prescription,
or were it to be referred to the jury, no proof appears by

which it could be established. *Proprietors of Ken. Purchase* v. *Call*, 1 Mass. R. 483; *Proprietors of Ken. Purchase* v. *Springer*, 4 Mass. R. 416. One who sets up a prescription must prove a right commensurate with his claim. 1 Esp. N. P. 362. Buller on Trials, 59; *Morewood* v. *Wood*, 4 T. R. 157; *Bailiffs of Tewksbury* v. *Binkett*, 1 Taunt. 142; 1 Phil. Ev. 127; 2 Phil. Ev. 156; Yelv. 55; 5 Com. Dig. Pres. 3 K. 25.

A right by prescription is founded on the supposition of a grant and therefore it can never be established by mere length of time. 9 Dane's Ab. 413. It must be proved to be adverse — claimed as a right — and with the knowledge of the opposite party. *Robison* v. *Swett*, 3 Greenl. 316; *Tinkham* v. *Arnold*, 3 Greenl. 120; *Sargent* v. *Ballard*, 9 Pick. 251; *Bethum* v. *Turner*, 1 Greenl. 111. It must be unexplained, 3 Dane's Ab. 252; Stearns on Real Actions, 240; *Ricard* v. *Williams*, 7 Wheat. 59. It must not be unreasonable. 1 Bacon's Abr. 672. *Wilkes* v. *Broadstreet*, 2 Strange, 1224; 1 Dane, 26. No reason can be shown why the plaintiff should maintain the defendant's fence. One cannot charge the soil of another, that he may claim a discharge on his own land. 6 Coke, 60. Time is not counted when there is no injury. *Cooper* v. *Bartown*, 3 Taunt. 99; *Bethum* v. *Turner*, 1 Greenl. 111. If unenclosed for the convenience of the party, no prescriptive rights are thereby acquired. *Inhabitants of 1st Parish in Gloucester* v. *Beach*, 2 Pick. 60; Eden on Injunctions, 113. There can be no prescription for any thing which is useless or injurious. 2 Vent, 126; *Fowler* v. *Saunders*, Cro. Jac. 446.

Prescription against a statute is void. Coke on Lit. 115; 6 Bac. Abr. 670. If there be an interruption of the prescriptive or customary right it is extinguished. 1 Bac. Abr. 678; *Melvin* v. *Whiting*, 13 Pick. 184; Co. on Lit. 114.

If Clark's land adjoined that of the plaintiff he could compel him to make the fence.

Donnell *v.* Clark.

The opinion of the Court was delivered by

WESTON C. J. — If the defendant has title to the beach ad-
joining his land, it had its origin in the deed of 1667, from
William Hammond to William Symonds. That deed purports
to convey four or five acres of sea-wall, but one of its bounds,
"so by the sea," might be sufficient to convey the beach.
The deed, however, from the heirs of Symonds, under which
the defendant claims, bounds the farm upon the sea-wall. But
whatever may have been his title to the beach, adjoining his
own land, he has shown none to that, which adjoins the land
of the plaintiff. He justifies the act, charged as a trespass, by

setting up two. rights by prescription ; the one a right to depasture the beach, embracing that which adjoins the plaintiff's land, the other that the plaintiff should fence his land against the defendant's horses and neat cattle running upon and depasturing the beach. The second right of prescription is dependent upon, and ancillary to, the first.

The right, upon which the defendant relies in his brief statement, is what the law denominates a prescription in a *que estate.* If a man prescribes in a *que estate* nothing is claimable by this prescription, but such things as are incident, appendant or appurtenant to lands ; " for it would be absurd to claim any thing, as the consequence or appendix of an estate, with which the thing claimed has no connection." 2 Bl. Com. 265 ; Coke Lit. 113, b. In *Cortelyou* v. *Van Brundt,* 2 Johns. 357, Thompson J. says, that prescription will in no case give a right to erect a building upon another person's land. " This is a mark of title and of exclusive enjoyment, and it cannot be acquired by prescription." Title to land requires the higher evidence of corporeal seizin and inheritance. Prescription applies only to incorporeal hereditaments. " No prescription can give title to lands and other corporeal substances." 2 Bl. Com. 264. The brief statement in this case in terms claims the right to have horses and neat cattle run upon the beach, but from what precedes it is fairly deducible, that the right intended to be set up was, that they might run there for the purpose of depasturing. If a right of common was claimed, this is consistent with a prescription in a *que estate.* But if the prescription is for the exclusive use of the herbage, growing upon land not his own, which the defendant has attempted to make out in proof, it may well be doubted, whether such a right can be claimed by prescription, as incident or appurtenant to another estate. .

Who is the owner of the beach, adjoining the plaintiff's, does not appear, but it does appear, that the public, as far back as memory extends, have been in the exercise and enjoyment of a right of way over the whole beach, and that two roads thereon pass over that part, which adjoins the defendant's land

across which however there are gates.  These roads are from time to time repaired by the town, and are to be considered as public highways, notwithstanding the gates.  *Thomas* v. *Marshfield*, 13 Pick. 240.  Whoever may be the owner of the beach, from which the defendant's horses passed into the plaintiff's close, it was lying waste, and there is no evidence that it has ever been fenced, or in any manner made available by the owner.  The evidence for the defendant is, that he and those from whom he derives his estate, have been accustomed to turn their cattle and horses into their own pasture, and there being no fence on the seaside, they have been accustomed to run upon the beach generally, and upon that part of it, which adjoins the plaintiff's land.  It would seem that this has been rather the consequence of the want of a fence to restrain them, than an evidence of a right in the lands adjoining.  The right exercised by the defendant was, that of turning his cattle and horses into his own pasture, the effect was, there being no fence in that direction, they run upon the beach.  It does not appear to us, that this was of that adverse and marked character, which is sufficient to prove the prescription, upon which the defendant relies.  It was in no degree injurious to the owner of the beach, and therefore not likely to produce any resistance or animadversion on his part.

There is much waste and uncultivated land in this State, upon which cattle belonging to the owners of farms adjacent are accustomed to run.  The fact may not be known to the non-resident owner, or if known he has no motive to interfere to prevent it.  If there is herbage upon it, which he does not choose to make available to his own use, it does not injure him to have it fed by the cattle of others.  If he forbears to resist or to complain, where complaint would be so unreasonable, an accommodation thus enjoyed or suffered, ought not to ripen into a prescriptive right.  The establishment of such a principle, would be productive of extensive mischief.  It is only long continued and adverse enjoyment, which is evidence of prescription.  The case presented has some analogy to common *pur cause de vicinage*, where "no man can put his beasts

therein, but they must escape thither of themselves, by reason of vicinity; in which case one may enclose against the other, though it hath been so used time out of mind, for that it is but an excuse for trespass." Coke Lit. 122, a ; *Thomas* v. *Marsh-field*, 13 Pick. 240. No right arises in this way; but the party so circumstanced may defend against an action of trespass by the owner of the land, to which the cattle thus escape. He has no immunity in regard to lands contiguous to that upon which they run.

In the opinion of the Court, the defendant has not made out the right on the beach adjoining the plaintiff's land, for which he prescribes. If he has no such right, he must fail in the incidental and attendant right, to require the plaintiff to fence against his cattle and horses. A prescription to fence at common law, was sustained in behalf of the tenant of the adjoining close, to enforce which he might sue out the writ of *curia claudenda. Rust* v. *Low & al.* 6 Mass. R. 90.