*Brown* and *Polk*, for appellee.

———————◇———————

## Mitchell and Another *v.* Parks and Others.

Streams.—Right to Divert Water.—Suit by A against B and C for diverting the water from a stream. The complaint alleged that A was the ·owner of a tract of land adjoining the town of *Martinsville*, which for more than twenty years had been supplied with water by a spring branch, having its source on other lands north of said town; that prior to 1842, the water of said stream had no regular channel, but overflowed and settled in the streets of said town, and that in said year one under whom A claimed dug a channel for said stream through the streets of the town and upon the said lands of A; that the water had run in said channel for more than twenty years, and that A and those under whom he claimed had during all that time used said water upon said lands for watering stock, &c.; that B and C had diverted the water by building dams and cutting

the banks of said stream, &c. B and C answered that they were citizens of said town; that in 1822, one D, who then owned the land upon which said spring is situated, and over which said stream flowed, conveyed said spring, and the waters thereof, to the use of the citizens of said town; that from the time of said grant the citizens of said town had continuously used said water for irrigation, tanning purposes, &c., and had from time to time built dams across the stream and cut ditches to divert said water for said uses; that the ditch or channel mentioned in the complaint, through which the water passed to the land of A, was cut by the citizens of said town to pass off the surplus water, and that A never had or enjoyed any part of said water except such surplus. Reply, that the use of the water claimed by the defendants under the grant from D did not interfere with the natural flow of said water until the time mentioned in the complaint.

*Held*, that the answer presented a good defense to the action.

*Held*, also, that the reply failed to avoid the answer.

VERDICT—POLL OF JURY.—PRACTICE.—A jury having returned a verdict, a poll was demanded, and in response to the question, "Is this your verdict?" one juror answered, "No, but I consented to it;" and on the question being repeated, answered, "Yes." The court refused to allow the juror to be further interrogated.

*Held*, that the response of the juror did not show that he dissented from the verdict.

*Held*, also, that a juror cannot be interrogated as to the grounds of his assent to or dissent from the verdict.

*Held*, also, that as the particular question which it was proposed to ask the juror is not set out, the Supreme Court must presume in favor of the action of the court below.

RIPARIAN PROPRIETORS.—In the character of riparian proprietors persons are entitled to the natural flow of the stream, without diminution to their injury.

ARTIFICIAL STREAMS.—PRESCRIPTION.—The owner of artificial works may acquire rights by actual appropriation as against the riparian proprietor, and the extent of the right is to be determined by the extent of the appropriation during the period necessary to establish a presumption of right.

SAME.—In order to raise the presumption of a grant the enjoyment must have been adverse. If it originated by mistake or license, or in any other manner which does not indicate the assertion of a right, the enjoyment is not adverse.

APPEAL from the *Morgan* Circuit Court.

ELLIOTT, J.—*James M. Mitchell* and *Samuel M. Mitchell,* the appellants, sued *William J. Sparks, Perminter M. Parks* and *Abraham W. Hunt,* the appellees. The material allega-

tions of the complaint are, in substance, that the plaintiffs are stock raisers, and the owners of a certain tract of land, which is described, situated in *Morgan* county, and adjoining the town of *Martinsville*, which, at the time of filing the complaint, was, and for more than twenty years prior thereto had been, supplied with water by a spring branch, having its source in the hills bordering on the north and northeast corner of said town of *Martinsville;* that prior to 1842, said spring branch had no regular channel, and the waters thereof accumulated and settled in the streets of said town; that on or before the year 1842, *Joshua Taylor*, a remote grantor of the plaintiffs, claiming the right so to do, procured or agreed with one *Robert Hamilton* to locate the channel and run said branch through the streets of said town, and to and upon the land of the plaintiffs; that the water of said branch had run in and along said channel to said land for more than twenty years; that the plaintiffs, and those under whom they hold, had used and enjoyed the use of said channel and the water of said branch for watering stock, under a claim of right and uninterruptedly during all of said time. It then alleged that the defendants, prior to, and on the 26th day of *July*, 1864, built dams across said stream above the land of the plaintiffs, cut the banks of the stream, and by means of ditches diverted the whole of the water from said channel, and from the plaintiffs' land, and converted the same to their own private use, and so continued to do. The complaint claims $1,000 damages, and prays for an injunction restraining the defendants and all others from diverting or preventing the flow of the water through said channel to the land of .the plaintiffs.

The defendants answered in four paragraphs. A demurrer was sustained to the third, and no question arises upon it here. The first was a general denial.

The second avers, in substance, that the defendants were, and for more than twenty years had been, residents and citizens of the town of *Martinsville*, in said county; that the

water in the branch mentioned in the complaint flows from a spring situated on a tract of land adjoining the town, and runs to and within the limits of said town, entering the same near the north-east corner thereof; that on the 9th of *March*, 1822, the land on which said spring arises and over which the same then flowed, and still flows, and on which the north-east quarter of said town is located, was held in fee simple by one *Joel Ferguson*, who, "by a conveyance, (a copy of which was filed with the answer,) conveyed and guaranteed the said spring, and the waters thereof, to the free use of the citizens of said town, and to and for the use of said town as the seat of justice of said county;" that from the time of said grant, the defendants, and all other citizens of said town, had continuously used the water of said spring and branch, for watering stock, for tanning purposes, for irrigating their gardens and lots in times of drouth, for wetting clay to manufacture bricks, and for whatever purposes might suit the convenience and be for the benefit of the citizens of said town, who, from time to time, had erected temporary dams across said branch, and dug channels leading therefrom, and checked the flow of water in said branch, and diverted the same to tanyards, gardens, yards, lots, mortar beds, and machinery, also for purposes of irrigation, manufacture, &c.; that at times during all of said period, there was a large surplus of water, above what was required for the use of the citizens of said town, flowing from said branch; that a channel or ditch was cut on and along the streets and alleys of said town, as stated in the complaint, to lead and permit the flow of said surplus water upon the lands of the plaintiff, which is the same stream mentioned in the complaint; but that the defendants, and other citizens of said town, by cutting said ditch did not abandon the right to use the water of said spring so conveyed to them, but still continued the use of the same, as was their right; that the plaintiffs never had or enjoyed any other part of said water than the surplus thereof, as

aforesaid; that the injury complained of by the plaintiffs was the use of the water by the defendants for the purposes and in the manner stated, and not otherwise, and as they had a right to do.

The fourth paragraph was by the defendant *Hunt* alone, and alleged that he then was, and for ten years previous thereto had been, the owner of lands over which said branch flows, and that he, and those under whom he held title, had at all times for the period of twenty years next preceding, taken and diverted the water of said branch for the purpose of irrigating said lands; that the water of said branch naturally, and without diversion, overflowed his said lands, and that the use of the water complained of is the same as before stated; that he had not used the same in any other manner; that he had not used or obstructed said branch, or the water thereof, as the plaintiff alleged against him.

The plaintiffs' counsel, regarding the second paragraph of the answer as double, and setting up two distinct grounds of defense, moved the court that the defendants be required to divide and number the same separately; which motion the court overruled. This ruling it is claimed was erroneous. We do not think the paragraph liable to the exception taken to it. It is not double; several facts are stated as constituting a single ground of defense. Upon the overruling of the motion, the plaintiffs filed separate demurrers to the second and fourth paragraphs, which the court overruled, and the plaintiffs excepted. This is also assigned as error.

The second paragraph alleges a grant by *Ferguson* (the owner of the spring and the land over which it flowed) of the spring and right of flowage for the use of the town and its inhabitants, and the continued use thereof by them under the grant. It alleges that the ditch or channel described in the complaint was constructed by the town and the citizens thereof for the sole purpose of carrying off the surplus water in times of heavy rains, to prevent the same from

flooding the town, leaving to the inhabitants the free use of the water for all desirable purposes, and that the plaintiffs never had or acquired the right to use more than such surplus, and that the use of the water complained of was the same that had been continuously and properly exercised under the grant. These facts, if true, as the demurrer admits them to be, constituted, it seems to us, a valid defense. It is urged that *Ferguson* had no right in the water flowing from his lands that he could grant. But if he was the owner of the spring, and of the land over which the water therefrom must flow to reach the town, as the answer alleges, he could without question grant the spring and the use of the water on his land and the right of the flowage thereof over his land to the town. Such, in substance, is the grant set up in the answer. But if nothing passed by the alleged grant of *Ferguson,* yet if the water from the spring when it passed from *Ferguson's* land into the town ceased to have any fixed channel, and spread over the surface and flooded a portion of the town, as is alleged both in the complaint and answer, and did not reach the land of the plaintiffs, it was certainly lawful for the inhabitants of the town to use it for any beneficial purpose; and if they collected it together by an artificial ditch within the limits of the town, their right to its use would not be thereby destroyed or abridged.

The complaint concedes that there was no natural channel by which the water from the spring was accustomed to flow to or upon the plaintiff's land; this being true, the then owner of the land had no right to claim that it should be brought there by an artificial one. And if the drain was constructed by the town or its inhabitants, as is alleged in the answer, for the sole purpose of passing off from the town, in time of freshets, the surplus water, over and above what might be used by the inhabitants, and if such surplus was all that the plaintiffs had used or acquired a right to use, they could not recover in this action.

The fourth paragraph was, in effect, a denial of the material allegations of the complaint, and though argumentative, was good on demurrer. The second paragraph was perhaps subject to the same objection, and as the general denial was also pleaded, might have been stricken out on motion.

The plaintiffs replied to the second and fourth paragraphs of the answer. First, by a general denial; second, that the use claimed by the defendants under the grant from *Ferguson*, did not interfere with the natural flow of said water until the time mentioned in the complaint. The court sustained a demurrer to the last paragraph of the reply, and the plaintiffs excepted. This ruling was correct. The plaintiffs claim the right to the use of the water by prescription; the second paragraph of the answer set up a prior right in the inhabitants of the town to the use of so much of it as they might or could use for beneficial purposes, and avers the continued exercise of that right, and also alleges that the plaintiffs never used or had the right to use any but the surplus water, not needed for use by the inhabitants of the town. If the defendants' use of the water was consistent with their prior right and continued enjoyment, whether it did or did not prevent the flow of the water to the plaintiffs' land would not be material.

The cause was tried by a jury, who returned a general verdict for the defendants, and also made special findings upon particular questions of fact, in answer to interrogatories propounded in writing at the request of the parties. The court overruled a motion for a new trial, interposed by the plaintiffs, and rendered judgment for the defendants on the finding of the jury, to which the plaintiffs excepted. The evidence is in the record, by a bill of exceptions.

It appears by a bill of exceptions that when the jury returned their verdict they were polled, at the request of the plaintiffs, and that eleven of them, when their names were respectively called, in answer to the interrogatory whether the verdict returned was theirs, promptly answered in the

affirmative, but that when the name of *Henry Sheplar*, the remaining juror, was called, he answered that the verdict was not his, but that he consented to it, and then, in response to the question, answered "yes." And the bill of exceptions says, "that the plaintiffs began to further interrogate said *Sheplar* as to his consent, and the court refused to allow this, to which the plaintiffs excepted."

The code provides that when the jury return into court and deliver their verdict, either party may poll them, and "If any juror dissent from the verdict, they shall again be sent out to deliberate." Here the juror did not dissent from the verdict, but in express terms assented thereto. The answer made by him indicated that it was not in accordance with his original private judgment, but that he had agreed to it and then gave it his assent. We know of no authority justifying a party in interrogating a juror as to the grounds of his assent to, or dissent from, the verdict. Besides, in the case before us, the question propounded to the juror which the court excluded is not given, and we must presume in favor of the ruling of the court below, that it was an improper one. The plaintiffs did not request that the jury should be sent back for further deliberation.

Among the particular facts found by the jury, in answer to interrogatories, are the following: that the artificial channel by which the water of the spring was conducted to and upon the plaintiffs' land was constructed by *Robert Hamilton*, "in 1839 or 1840, at the instance of the citizens of the town of *Martinsville*, to rid the town of surplus water;" that the plaintiffs had not had the use of the water for twenty years without interruption; that the plaintiffs, and those under whom they claimed title to the land, first began to use the water in said stream as stock water in 1847 or 1848. These special findings are fully sustained by the evidence.

It further appears from the evidence that *Robert Hamilton* constructed the channel by which the water was carried upon the land now owned by the plaintiffs, under the em-

ployment of the citizens of *Martinsville*, for the purpose of getting rid of the surplus water, which at times flowed from the spring and its channel above, into and over the town; that one *Taylor*, who then owned the land now belonging to the plaintiffs, gave his assent or parol license thereto, not that he desired it, or wished to use the water, but as an act of neighborly kindness, and that no use was made of the water by him or others on the land now owned by the plaintiffs until the year 1847 or 1848; that since said channel was constructed, citizens of the town had repeatedly, and whenever they desired, tapped the same, and diverted and used the water for horticultural and mechanical purposes.

The court instructed the jury that "the fact that the waters of the branch in controversy have, by an artificial channel, run upon and over the lands of the plaintiffs for a period of twenty years or more, is not sufficient, under the pleadings in the case, to make out the plaintiffs' cause of action, unless the jury shall also find that there has been an actual user of said water by the plaintiffs, and those under whom they hold title, for a period of twenty years." The giving of this instruction is assigned for error. It is insisted by the appellants' counsel that if the water had flowed through the artificial channel, without interruption, upon the plaintiffs' land for a period of twenty years, that fact would establish their right thereto by prescription, without proof that they had used the water for any purpose. The argument is that if the plaintiffs' land had enjoyed the stream for twenty years, their right to its continuance became fixed and could not be disturbed.

The law bearing on this question is stated by Chancellor *Kent* thus: "In the character of riparian proprietors, persons are entitled to the natural flow of the stream without diminution to their injury, and to them may be applied the observation of WHITLOCK, J., in *Shurty* v. *Piggott*, that a water course begins *ex jure naturæ*, and having taken a

course naturally, it cannot be diverted. But on the other hand the owners of artificial works may acquire rights by actual appropriation, as against the riparian proprietor, and the extent of the right is to be measured by the extent of the appropriation, and the use of the water for a period requisite to establish a conclusive presumption of right. In such a case the natural right of the riparian proprietor becomes subservient to the acquired right of the manufacturer. * * * * The right is confined to the extent and mode of enjoyment during the twenty years. * * * * To render the enjoyment of any easement for twenty years a presumption *juris et de jure,* or conclusive evidence of right, it must have been continued, uninterrupted and adverse, that is, under a claim of right, with the implied acquiescence of the owner." 3 Kent pp. 442, 444.

In order to raise the presumption of a grant the enjoyment must have been adverse. As to what is, or is not, an adverse enjoyment, will depend upon the facts and circumstances of the case, which of course are to be ascertained by the jury. If the enjoyment is shown to have originated in mistake, or by favor or license, or if it was commenced and continued in any manner which does not indicate an assertion of right, the enjoyment is not adverse, and consequently the presumption is not raised. Angel on Water Courses, 2 ed. 68. See also, Washburn on Eas. & Serv. §§ 25, 26, pp. 85, 86.

We think there was no error in giving the instruction.

Several other exceptions were taken to instructions given, and to the refusal of the court to give certain instructions asked by the appellants, but as they related only to the rights of riparian proprietors, and the relations of such proprietors to each other, or to the nature and extent of the right acquired by prescription, after the lapse of twenty years uninterrupted enjoyment, they could not have affected the finding of the jury, that the plaintiffs had not acquired the right by prescription to the use of the water. They

were immaterial to the decision of the case, in the view we have taken of it, and their consideration is, therefore, rendered unnecessary.

The judgment is affirmed, with costs.

*S. Claypool* and *J. V. Mitchell*, for appellant.

*W. R. Harrison*, for appellee.