## NULL *v.* WILLIAMSON.

[No. 20,626. Filed May 29, 1906.]

1. PLEADING. — *Complaint.—Easements.—Ownership.—Prescription.*—As every easement lies in grant, actual or presumed, an allegation of ownership is sufficient, leaving the evidence to show the right by prescription. p. 539.

2. EASEMENTS.—*Elements.*—An easement by prescription consists of the adverse, exclusive, uninterrupted and continuous use of real estate under a claim of right and with the knowledge and acquiescence of the owner thereof. p. 539.

3. EVIDENCE.—*Judicial Notice.—Canals.—Berm.—Use of.*—Courts take judicial notice that the berm of a canal serves to prevent back-lying material from falling into the canal. p. 541.

4. EASEMENTS. — *Prescription. — Limitation of Actions.* — The twenty-year statute of limitations applies to cases of easement by prescription, though it formerly did not. p. 544.

5. SAME.—*Grants.—Right to Disprove.—Prescription.—Evidence.*—In an action to establish an easement by prescription, the owner of the servient estate cannot prove that a grant was not actually made, but he may show that the plaintiff's holding was such that it could not ripen into a legal title. p. 544.

6. EASEMENTS.—*Twenty-Years' User.—Burden of Proof.—Claim of Right.*—Where the plaintiff shows an open use of a way, apparently as owner, for twenty years, the burden of disproving his prescriptive right to an easement is on the defendant, and this may be done by proof that such use was not under a claim of right. p. 544.

7. SAME. — *Grants. — Presumptions.* — Grants are presumed in cases of alleged easements where the facts are such as that the use shown would otherwise be unreasonable, but where the facts shown are consistent with the non-existence of a grant, as where the user was merely permissive, an easement will not be presumed. p. 545.

8. SAME.—*Open Space.—Use of.—Presumptions.*—The use by the plaintiff for his own purposes of an open space, left by an owner for the use of his customers, raises no presumption of a grant, and the fact that the use was shared by the public raises the presumption that plaintiff was not claiming such way as his individual right. p. 546.

9. SAME.—*Use of Insignificant Tract.—Presumptions.*—The use of an insignificant tract of open lot, being of practically no value to the owner, does not give rise to a presumption of a grant, but rather that such use is merely permissive. p. 546.

10. SAME. — *Claim of Right.—Evidence.*—Where the evidence shows that the plaintiff and her grantors had used a way over twenty years without making any claim of right thereto, an easement therein is not shown. p. 547.

From Allen Circuit Court; *E. O'Rourke,* Judge.

Suit by Jessie C. Williamson against Lycurgus S. Null. From a decree for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*W. & E. Leonard,* for appellant.
*James B. Harper* and *John W. Eggeman,* for appellee.

GILLETT, J.—Appellee filed a complaint in two paragraphs against appellant. The first was to establish, and to enjoin the obstruction of, a private way, extending along the north end of certain lots in the town of New Haven, from a public street to a barn which was situate about two hundred fifteen feet from said street. The other para-

graph seems to have been founded on the theory that the strip of land in controversy is a public alley, and that, as it had been obstructed, and as the obstruction caused a special injury to appellee, she was entitled to maintain a suit to enjoin appellant from obstructing the alleged way.

As every easement lies in grant, actual or presumed, appellee might have greatly simplified the first paragraph of her amended complaint by alleging her ownership

1. of the way claimed, leaving to the evidence to disclose whether she had an easement by prescription. *Hall* v. *Hedrick* 1890), 125 Ind. 326; *Mitchell* v. *Bain* (1895), 142 Ind. 604, 606. The elements which constitute a prescriptive easement are well understood. *Davis* v. *Cleveland, etc., R. Co.* (1894), 140 Ind.

2. 468, and cases there cited. Owing to the existence of a recital in said paragraph, some facts can only be said to appear, if at all, as matters of necessary inference from facts well pleaded. As to the extent that some essential matters may be said thus to appear, the views of the members of this court are quite divergent. However, as doubt does not exist as to the requirements of a prescription in such an action, and as the case must be reversed, as there is a failure of proof, we shall put our reversal on that ground. As to the second paragraph of the amended complaint, we may say, in passing, that its validity is a moot question. The evidence, as it developed on the trial, had no tendency to show the existence of a public alley, out of which a subsidiary right in appellee could grow, and, therefore, the existence of said paragraph may be disregarded. We proceed to the question as to whether the court erred in overruling appellant's motion for a new trial.

As conducive to a more ready understanding of the matter, we exhibit the following plat of the *locus in quo.*

Null v. Williamson—166 Ind. 537.

Appellee is the owner of lots twenty-one, twenty-two, twenty-three and twenty-four, exhibited on said plat, and her effort upon the trial was to establish a private driveway, ten feet wide, immediately north of said lots, on the berm or heel path of what was the Wabash & Erie canal, from Broadway to a barn which stands twelve feet south of the north line of said lot twenty-four. Appellee deraigns her title to said lots from the canal company. About 1858 a grist-mill was erected on lot twenty-one, about forty feet south of said berm, and this mill was operated by various persons until 1881 or 1882, when it was destroyed by fire. There was also, during a few of the earlier years of said time, a shingle-mill on lot twenty-one, situate north

of the grist-mill. From 1860 to 1881 there was a hog-pen in the northeast corner of lot twenty-three. Hogs were kept in said pen by the grist-mill people from 1860 until 1866, and it was the practice to feed them from the north end thereof. The barn above mentioned was erected in 1863, and, until the burning of the grist-mill, it was used as a stable for the horses that were used in connection with said business. Lots twenty-one and twenty-two were not enclosed by a fence until long after the destruction of said mill. The other lots had a fence along the north line thereof. The canal was abandoned as a waterway in 1881. As will be observed from the plat, there was a space left between the waterway and the lots to the south

3. thereof through said addition. This space was occupied by the berm of the canal, the purpose of it being, as we judicially know, to afford a level space which would keep dirt that might be further back from falling into the water. The north end of lots twenty-three and twenty-four was low, and, as there was a good path on the berm from Broadway, it became the habit of the men who operated the mill to use the berm in going to and from the barn. They and their customers also made frequent use of the east end of the way in passing to the north of said mill. The regular dock was on the east side of Broadway, but until the canal was abandoned boats occasionally tied up, and loaded and unloaded freight, opposite lots twenty-one and twenty-two, since there were no dock charges made for landing at that point. Some of this freight was consigned to the proprietors of said mill, and, as it was customary to store freight on the berm, near to the canal, the way along said lots twenty-one and twenty-two was used by the people who were shipping or receiving freight. To the west of lot twenty-two the berm grew narrower, and, presumably because it was not wide enough to pile freight on and yet leave a driveway, it was the practice for boats to land as near to the bridge over Broadway as possible. To

the west of the barn the berm could not be traveled except at times of low water, and there was no evidence of any substantial use of it for the purpose of travel beyond that point. On three occasions said mill owners placed a number of loads of gravel on the alleged way next to the barn, in order to make the way easier to travel at that point. Appellee's former husband, Volney Powers, acquired an interest in lots twenty-one and twenty-two in 1857, and he also acquired an interest in lots twenty-three and twenty-four in 1864, and from the latter date forward, with the exception of a short time prior to April 6, 1882, the title to said property has been either in said Powers or in appellee. During the time the mill was in operation, however, there were outstanding interests in said property held by persons who were engaged in the business of operating the mill. April 6, 1882, appellee became the sole owner of said lots, and during the most of the time down to the latter part of April, 1902, at which time appellant obstructed the alleged way, the barn has been occupied by tenants. We may say, however, in passing, that the evidence of the extent of the user since 1897 (after a brick sidewalk was built along the west side of Broadway) is very vague, and is scarcely sufficient to warrant an affirmative finding that it was continuous. There has never been an assertion of a right to use the strip in question, and the tenants used it, without any direction from the owner, simply because it was the only convenient way to the barn. Appellant has a record title from the canal company. So far as the statement of facts is concerned, it but remains to call attention to the evidence bearing on the question as to whether the user was under claim of right and exclusive. Appellee's counsel asked of her witness Allen H. Dougal, who had been a part owner of said lots and a partner in the business from 1866 to 1875, the following question concerning said way: "You may state how it was used; whether by the acquiescence of the canal company, or by agreement, or

how." The witness answered: "Why, we used it because we had to use it, and we were never denied the use of it." This witness subsequently testified that he never claimed any exclusive right in said way; that he thought it belonged to the public. Another witness for appellee, Charles E. Stapleford, who had also been a part owner of said lots, and engaged in the business, testified that he made no claim whatever to the berm of the canal. Appellee, who was a witness on her own behalf, was asked the following question on her direct examination: "You may tell the court whether or not you always claimed the right to enter the mill and the shingle-mill, while it was there, and the stable, from the heel path." She answered: "We simply used it. We always used it without any objection from any one." We take the following further questions and answers from her examination, for the purpose of showing her understanding of the facts: "There was no permission given you by anybody, you simply used it? A. We used it without any permission that I know about. The very reason you used that was because the canal company left that space open? Was not it because of that? A. We used it because it seemed to be the only way to get to the stable. You did not claim the exclusive right to it? Is that it? A. I don't know as we did. We used it and took the right to go there all the time. Anybody else who wanted to go there used it too? Did they use it generally? A. They used it just as they do in such towns. You go anywhere you please. Can you explain why you did not build the fence north of this line, taking in your easement, instead of south of it? A. We did not claim it. We used it. We did not claim it as our own. You did not claim to own that strip? A. No, sir. If we had claimed it we would have fenced it in. You merely claimed the right to use it? A. We considered that we had the right to use it because we had always used it for years before."

Allen M. Hartzell, who, with his brother, was an owner of the property in 1881, testified that he and his brother did not claim any easement on the berm of the canal.

There undoubtedly has been a long period of user of the land in question for the purposes of a way, but at least down to the time the canal fell into disuse we think 4. that it can be affirmed with confidence that it does not appear that appellee or her grantors had acquired the servitude claimed. Prescriptive easements have never been regarded as governed by the statute of limitations concerning ejectment, but until the regulation of the matter by statute in England it was the practice of the judges, following the analogy of the statute of limitations, to submit to juries the question whether after a twenty-year possession, under circumstances now recognized as requisite to make out a prescription, a presumption of a grant should be drawn. With a majority of the courts of this country, however, it appears that from a mere inference of fact the doctrine has hardened into a presumption *juris et de jure,* or conclusive evidence of right. *Mitchell v. Parks* (1866), 26 Ind. 354; *Miller* v. *Richards* (1894), 139 Ind. 263; 3 Kent's Comm., *444; 14 Cyc. Law and Proc., 1146, and cases cited. It seems probable that our statute concerning easements (§5746 Burns 1901, §4321 R. S. 1881) is but declaratory of this doctrine.

The owner of the servient tenement may not show that in fact there was no grant, but he may show by facts and circumstances that there was not such a holding as 5. would ripen into a legal title. 14 Cyc. Law and Proc., 1147. It is undoubted that as a general rule the open and continuous use of a way, apparently as owner, for the statutory period, casts upon the servient owner the burden of explaining that possession (*Rennert* v. 6. *Shirk* [1904], 163 Ind. 542); but, as the doctrine of prescription is founded on the presumption of a grant, the person against whom it is asserted may appeal to

facts and circumstances for the purpose of showing that the use was not under claim of right. In *Arnold* v. *Stevens* (1839), 24 Pick. 106, 35 Am. Dec. 305, the court said: "An enjoyment with the consent, or consistently with the rights of the true owner, has no tendency to prove 7. a conveyance from him: *Bealey* v. *Shaw* [1805], 6 East 208; *Keene* v. *Deardon* [1807], 8 East 248, 263. The very ground of the presumption is the difficulty or impossibility of accounting for the possession or enjoyment without the existence of a grant, or some other lawful conveyance; *Dawson* v. *Duke of Norfolk* [1815], 1 Price 247. But, if the possession can be accounted for consistently with the title, no presumption arises; *Yard* v. *Ford* [1671], 2 Saund. 175, note; *Daniel* v. *North* [1809], 11 East 372; *Wood* v. *Veal* [1822], 5 Barn. & Ald. 454. 'The presumption of a deed from long usage, is for the furtherance of justice and for the sake of peace, when there has been a long exercise of an adverse right.' 'For instance, it cannot be supposed that any man would suffer his neighbor to use a way with carts and carriages over his meadow, for twenty years successively, unless some agreement had been made between the parties to that effect.' *Crimes* v. *Smith* [1588], 12 Coke 4; *Bedle* v. *Beard* [1588], 12 Coke 4; *Mayor of Kingston* v. *Horner* [1774], Cowp. 102; *Parker* v. *Baldwin* [1809], 11 East 488. But, says a learned judge of the Supreme Court of the United States, 'presumptions of this nature' are founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing adverse title in the party in possession. They can, therefore, never arise where all the circumstances are perfectly consistent with the non-existence of a grant. *Ricard* v. *Williams* [1822], 7 Wheat. 59, 109 [5 L. Ed. 398]."

If the facts and circumstances of a case lead to the conclusion that the user was merely permissive, they are fatal

to the prescription. *Nowlin* v. *Whipple* (1889), 120 Ind. 596, 6 L. R. A. 159. "The inference of a grant, if raised at all, is derived from a claim on the one side, and a yielding on the other, of that which can properly be created only by a grant." 2 Washburn, Real Prop., *42.

Where a space is designedly left open by the owner, either for his own convenience or to enable his customers to resort to him, the presumption ordinarily is that a

8. use of such space by an individual, even for his own purposes, is permissive. 14 Cyc. Law and Proc., 1151; *Kilburn* v. *Adams* (1843), 7 Metc. 33, 39 Am. Dec. 754. And the fact that a use was one which was shared with the public gives rise, in the absence of evidence to the contrary, to a presumption that it was not under an exclusive or particular claim of right. 14 Cyc. Law and Proc., 1157.

The only fact that might seem to distinguish this case from the doctrine last stated is that there was a portion of the alleged way which appellee's grantors used

9. that was beyond the portion of the berm which the public resorted to in connection with the transportation of freight. But the question then arises, an adequate reason for leaving the berm uninclosed appearing, whether a use of it to the west of the traveled way, where the berm was too narrow to admit of unloading freight and yet leave room for wagons to pass and repass, was so far burdensome to the canal company as to warrant the supposition that there was an acquiescence in a hostile claim. Of course, it is not necessary to prove any actual damage to the owner, but particularly in the case of a small piece of land which is wholly unavailable for the use of the owner, where the travel may reasonably be referred to an implied license, it would seem that the use should be treated as permissive. 2 Washburn, Real Prop., *44; *French Piano, etc., Co.* v. *Forbes* (1900), 129 Ala. 471, 29 South. 683, 87 Am. St. 71; *Donnell* v. *Clark* (1841), 19 Me. 174; 14 Cyc. Law

and Proc., 1155; 22 Am. and Eng. Ency. Law (2d ed.), 1200. Thus it was said by Elliott, J., in *Parish* v. *Kaspare* (1887), 109 Ind. 586: "An owner of land is not shorn of any of his rights by merely permitting, as a favor, another to pass over his land. In order to establish a prescriptive right, something more than mere permissive user must be shown. Goddard, Easements (Bennett's ed.), 134. The use of land for the purpose of passing over it is not inconsistent with the right of ownership, and where there is no inconsistency between the use and the ownership, there can be no prescriptive right."

We deem it clear that, down to the time that the canal was abandoned, there was no showing made of a user which would warrant the conclusion that it was adverse, and as there was no evidence that conditions had materially changed, so as to render the exercise of the right a burdensome one, we are of opinion that the user did not cast a burden on appellant to explain it.

So much for the matter in the absence of direct proof of an adverse holding. Upon that point it is to be recollected that the witnesses whom appellee offered disclaimed the idea that there was any claim of right in themselves, as distinguished from the public. Her own testimony shows that she and her grantors "merely used it;" and that they merely "took the right to go there all the time," "because it seemed to be the only way to get to the stable." If evidence of this character can be said to exert any force, its tendency must be to break down the claim of an adverse possession.

Judgment reversed, with direction to grant a new trial.