## ALVAN BRADLEY *vs.* PEABODY H. RICE *& als.**

In a conveyance, where the land is bounded on a pond, the grant extends only to the margin of the pond.

And in such case, the grant is limited by the margin of the pond, as it existed at the time of the conveyance ; whether it was then in its natural state, or raised above it by a dam, or depressed below it by the deepening of its outlet.

*To, from,* or *by,* are terms of exclusion, unless by necessary implication they are manifestly used in a different sense.

THIS was a complaint under the statute for flowing the complainant's land, by means of a dam, at the outlet of *Flying Pond,* in *Vienna.* At the time of the injury complained of, the lands upon the margin of *Flying Pond,* including the complainant's, were flowed by the dam of the defendants, more than they were by the pond in its natural state, but not more than they were at the time of the giving of the deeds in 1792, under which the complainant claims, by an old dam made by the proprietors of *Wyman's* plantation, now *Vienna,* prior to that time. So much of these deeds as is pertinent to the present case is stated accurately in the opinion of the Court. The defendants own the land, unless conveyed by the deeds under which the complainant claims.

The trial was before *Weston C. J.,* who instructed the jury, that the defendants had a right to raise the water, by means of their dam, above its natural level, but not higher than the first dam raised it in 1792, when the deeds under which the complainant claims were given. The verdict was for the defendants. If the Court should determine, that this instruction was wrong, and that the complainant's title covers the land to the pond in its natural state, then the verdict was to be set aside.

*R. H. Vose,* for the complainant, argued in support of the following positions.

1. That, as the deeds under which the complainant holds bound him upon *Flying Pond,* and give him an extent back until an hundred acres are completed, his land extends to the margin of the pond in its natural state.

---

* *Mem.* Parris Judge, having been called home by sickness in his family, was not present at the argument of this case.

In considering this question, it should be recollected, that it is a settled rule of construction, that in deeds between individuals, all doubtful expressions are to be taken most strongly against the grantee, he being supposed to select the words. *Canning* v. *Pinkham*, 1 *N. H. Repts.* 353; *Adams* v. *Frothingham*, 3 *Mass. R.* 361; *Worthington* v. *Hylyer*, 4 *Mass. R.* 205; *Watson* v. *Boylston*, 5 *Mass. R.* 411.

If the natural pond is intended by the expressions in the deed, then that boundary will be fixed and certain, and from it the proprietor may find a certain boundary of the other end of the lot. But if the pond, as it happens to be flowed, is intended, then the owner will have an ever varying line of boundary, depending on accident, or on the caprice of the occupant of the dam.

2. But the complainant is bounded upon the pond in its natural state, or as flowed by the dam; and in either case by law his land extends to the centre of the pond.

When the deeds under which he claims were given, the grantors owned the whole land, and had the power to grant as much as they chose, and on such terms as they pleased. There is nothing in the case, or out of it, to distinguish this from the multitude of small ponds in the country into and from which streams run. However the law may be in regard to large lakes, the principle is well settled, that when the grantee is bounded upon a common river, or pond, his grant extends to the centre of such river or pond. *Angel on Watercourses*, 80; *Lunt* v. *Holland*, 14 *Mass. R.* 149; *Hatch* v. *Dwight*, 17 *Mass. R.* 289; *Hathorn* v. *Stinson*, 1 *Fairf.* 238. Where land is conveyed, which is covered with the water of a mill-pond at the time, the purchaser is entitled to his damages accasioned by the flowing under the statute. *Hathorn* v. *Stinson*, before cited.

*R. Williams* and *Wells*, for the defendants.

1. The deeds under which the complainant derives his title bound his grantors upon the pond, or by the pond, or running to the pond. His land extends only to the margin of the pond, as it was at the ordinary height of the water of the pond, as it then was, flowed by the dam. And it can make no difference, whether this be a natural pond in its natural state, or flowed by a dam, or an artificial pond. The pond, as it then existed, is his boundary,

and he can go no farther. There is no greater difficulty in finding where the margin of a pond, raised by a dam, or entirely artificial, is, than of a natural pond in its natural state. The intention of the parties to a deed must govern, and in this case, it could not have been the expectation of either, that the owner of the whole property would retain the mill, and sell his mill-pond.

2. The title deeds, under which the complainant holds, refer to a plan of the plantation. This plan is as much a part of the deeds, as if copied into them. By an inspection of the plan, it will be seen, that no part of the pond is included in that lot.

It has been said, that the same authorities, which decide, that a grant bounded on a small fresh water-stream will carry the grantee to the centre of the stream, also extend the principle to the case of ponds. It is enough, that this grant extends only to the margin of the pond ; and had it been a small stream instead of a pond, the result would have been the same. But none of the authorities cited extend the principle to the case of ponds. In the application of the principle, we know of no difference between a pond of half a dozen miles in circumference and *Moosehead* lake, or lake *Erie*. It is utterly impracticable to carry those principles into effect in case of a circular pond or lake.

The opinion of the Court was drawn up by

WESTON C. J. — The counsel for the complainant abandons in argument any claim for flowing any part of lot number eighty-five. By the deed of the westerly part of lot number eighty-four, it was bounded southerly on *Flying Pond,* and to extend thence northerly, until one hundred acres were completed. The easterly part of eighty-four was conveyed to run southerly to the same *Pond,* referring to a plan. By that plan that lot is laid down as running to, but not into, the *Pond.* The grantors of eighty-four had previously, by a dam, raised the waters of the *Pond* above its natural margin, for the purpose of creating a reservoir, to feed their mills.

The first question presented is, whether by these deeds, under which the complainant derives title, *Flying Pond* is made a boundary, as it then was, or in its natural state. And we are of opinion, that the *Pond,* as it then was, was the monument contemplated and intended by the parties. The accumulation of

Bradley *v.* Rice.

water created by the dam, and that which had naturally collected, formed one aggregate. By the *pond* must be understood the whole collection of water, as it then existed, and as it presented itself to the eye. So if instead of extending its margin by a dam, the limits of the *pond* had been contracted, by deepening its outlet, land subsequently conveyed, bounded on the *pond*, would extend to its new margin.

To, from, or by, are terms of exclusion, unless by necessary implication, they are manifestly used in a different sense. This is clear, where land is conveyed bounded by the land of A. and running from the land of B. to that of C. But it is contended, that although lot number eighty-four runs to, and is bounded by the pond, it is not limited to its margin, but runs by construction of law to its thread or centre. It is true, that where land is bounded on a river or stream, where the tide does not ebb and flow, the owner's title by construction of law, extends to the centre or thread of the stream. But *Flying Pond* is not a river or stream. No case has been cited, nor have we found any, where that rule of construction has been extended to a pond or lake. *Neguasset* pond, which was the subject of discussion in *Hathorn* v. *Stinson et als.* 1 *Fairf.* 238, was a mere expansion of *Neguasset* river or stream. In that case, *Parris J.,* in delivering the opinion of the court, says, " the law of boundary, as applied to rivers, would no doubt be inapplicable to the lakes, and other large natural collections of fresh water, within the territory of this State. At what point its applicability ceases, it is unnecessary now to consider, as the case does not call for it."

The proprietors of the pond and of the contiguous lands, when they sold, to the pond, must have intended to reserve that as a reservoir for the purposes, to which it had been appropriated. They used a term of exclusion. Their intention and meaning is thereby manifested. Had the land been bounded upon a river or stream, or upon an artificial pond created by expanding a stream by means of a dam, the riparian proprietor would go to the thread of the stream. This is law well settled and understood. But it has not been so settled, with regard to ponds and lakes. Nor are we aware, that there can be one construction for small ponds or lakes, and another for large ones. Where shall the line be

drawn ?   At what point does the one construction end, and the other begin ?   In the absence of any direct authority, for extending by construction the bounds, which the grantors have prescribed in the deeds under consideration, we do not feel at liberty to do so, from any supposed analogy between streams and ponds. It is, to say the least of it, of very doubtful application.   The grantees were carried to the pond; and we are not satisfied that they, or the complainant under them, has any right to go further.

In *Waterman* v. *Johnson*, 13 *Pick*. 261, the court held expressly, that land bounded on a natural pond, went no farther than the margin of the water.   The construction, now urged for the complainant, was not there even contended for ; although it would have been decisive of the cause.

*Judgment on the verdict.*