MOSES GLEASON, *Comp't, versus* WENTWOTH TUTTLE, JR., *& al.*

In a complaint under the statute, for flowing land, to establish a prescriptive right of the mill owner to flow, it must appear that he and his grantors have been accustomed to flow the land, without interruption, for twenty years or more, prior to the date of the complaint, thereby causing, during that period, actual damage.

A voluntary omission to flow in such a manner as to occasion annual damage, when such omission is accompanied by no acts indicative of an intention to resume the right, will afford no evidence of a continued adverse claim to exercise such right.

REPORTED by MAY, J.

COMPLAINT, under the statute, against the owners of mills and dam, for flowing complainant's land.

[No copy, either of the complaint or of the report of the case, is found among the papers in the case.]

*D. D. Stewart,* for complainant.

*Abbott,* for respondents.

The opinion of the Court was drawn up by

MAY, J.—The complainant's title to the land alleged to be overflowed, as well as the fact that it is overflowed by means of the respondent's mill-dam, is fully established by the deeds and other evidence in the case; and it is conceded that the title to the water privilege, including the spot where the mills

and dam which occasion the flowing are maintained, is shown
to be in the respondents.    The complainant, therefore, is en-
titled to prevail upon the merits, under the general issue, un-
less the special plea in bar is sustained by the evidence relied
upon in defence.

The special plea, in substance, alleges that the respondents
"have the right to, and rightfully may and do maintain the
mills and dam described in said complaint;" and that they
and their grantors, for more than forty years next before the
filing of the complaint, "have had the right to flow the land
described in the complaint, to the full extent of any and all
flowing of which they have been the cause, and of which said
dam and said mills have been the cause, without compensa-
tion to be paid therefor."    The replication to this plea ten-
ders an issue to the country upon the facts alleged, which be-
ing duly joined, the burden of proof is upon the respondents
to establish the facts necessary to sustain it.

The right to flow the complainant's meadow does not ap-
pear to have been conveyed to the respondents, or their grant-
ors, by any of the deeds which have been put into the case.
If, then, any such right exist, it must depend upon prescrip-
tion, or a user showing that the respondents, or their grant-
ors, have been accustomed to flow the premises uninterrupt-
edly for twenty years or more, prior to the date of the com-
plaint, thereby causing damage during that period.

Damages are not to be presumed from the mere act of flow-
ing.    *Underwood* v. *The North Wayne Scythe Co.*, 41 Maine,
291.    They must be proved to have been of yearly occur-
rence, unless a temporary omission to flow may have been oc-
casioned by the leaky condition or prostration of the dam, in
which case the time necessarily and reasonably spent in re-
pairing or rebuilding the dam, will not interrupt the running
of the twenty years, or prevent the acquisition of the right
to flow.    *Dana* v. *Valentine*, 5 Met. 8 ; *Wood* v. *Kelley & al.*,
30 Maine, 47.    A voluntary omission to flow in such a manner
as to occasion annual damage, when such omission is accom-
panied by no acts indicative of an intention to resume the

right, will afford no evidence of a continued adverse claim to exercise such right. Unless the flowing is of such a character as to enable the owner of the land to maintain a process to recover damages, no prescriptive right to flow the land will be acquired. *Nelson* v. *Butterfield & al.*, 21 Maine, 220.

In view of the preceding principles, does the evidence in this case raise any presumption of a grant to flow, or in any manner show the acquisition by the respondents of any such right? We think it does not. The testimony shows that no less than four dams, for the working of mills, have been successively erected and maintained, for longer or shorter times, upon the falls on Fifteen mile stream, at or near the village of Canaan. The first was erected in 1801. It was very high and leaky, and stood about 70 or 80 feet below the village bridge. In 1810 or 1811 a new dam was built, a few feet below the place of the first. This second dam was tighter, and, perhaps, a little lower than the other. The third dam was built in 1821, some 100 feet or more further down the stream than those which preceded it. By it the former dams were flowed out and rendered useless, and all the mills which had been worked by them were moved down the stream and placed upon the new dam, where they still remain in successful operation. In 1841, the fourth dam was built, and now remains. It is above the bridge and about 380 feet from the lower dam.

It becomes unnecessary to determine whether all these dams were erected upon the same mill site, so as to bring the case within the principle of *Stackpole & al.* v. *Curtis*, 32 Maine, 383, because we are fully satisfied, upon a careful analysis of the whole evidence, that, notwithstanding the meadows may have been sometimes overflowed, still there has been no flowing of the land described in the complaint, except in times of freshets, by which it was damaged in any degree, prior to the erection of the fourth dam; nor, since that, does there seem to have been any flowing, annually, prejudicial to such land, until after 1852, when this dam was rebuilt or repaired. The testimony fails to show that, before this, the trees or grass,

Gleason *v.* Tuttle.

or soil, upon the complainant's meadow, have been usually injured by the water thrown upon them by any of the dams. Much less does it show an annual injury. Whether the fact, that no such damage was sustained, is owing to the former dams being somewhat lower and much more leaky than the last, or to some other cause, is not material. This is not a case of the occasional absence of damage in any one year or years, arising from the state of the dams, but a case in which, if actual damage is shown to have existed in any particular years, its existence is only an exception to the usual condition of the land, after the erection of the dams. It is sufficient for the complainant, that no such continued, annual damage has been shown to exist, prior to the filing of his complaint, as will sustain the prescriptive right to flow without compensation, which is claimed by the respondents in their special plea.

It appears from the testimony of the engineers, Crosby and Wilde, that the fourth dam is at least six feet higher than the one now in use below it. The other testimony shows that it is this fourth, or upper dam, which causes the flowing now complained of. It was first erected by the respondents upon land belonging to their father, but by his consent; and it was repaired, or rebuilt, in 1852, by Frost and Burrill, under a lease of the privilege upon the west side of the stream, from these respondents; since which time it has been occupied by them and their lessees for their several mills; the latter using it for a machine shop, and the respondents for a shingle machine, a planing machine, and a door and blind factory. Whether, during the three years next preceding the filing of the complaint, the complainant's meadow has been annually overflowed, and, if so, whether it was occasioned by the respondents' dam, together with the extent of the flowing, and, whether it was prejudicial to the complainant or not, are questions, in the first instance, for the commissioners who are to be appointed in pursuance of the statute, and by whom the yearly damages, if any, are to be assessed. *Prescott* v. *Curtis & als.*, 42 Maine, 64.

Gleason *v.* Tuttle.

It is objected, in defence, that the complaint in this case is insufficient to authorize a judgment upon it against the respondents. If this objection is open to them upon the pleadings, the complaint will be found to contain all which the statute, upon which it is founded, requires. It is true, it does not allege that the water mill and dam of the respondents were erected upon their own land, or on the land of another, with the owner's consent. Such an allegation was held to be necessary under the statute of 1821, c. 45. But this statute was so modified by the R. S. of 1841, c. 126, upon which this complaint was brought, that such an allegation has been held, in the case of *Prescott* v. *Curtis & al.*, just cited, to be unnecessary. The form of the complaint in that case and in this are very similar. Whether the provisions of the statute of 1821, in relation to this particular, have been so far incorporated into the revision of 1857, c. 92, § 1, as to render a similar averment now necessary, we are not called upon to determine. In view of all the facts, we think the defence fails, and that the complainant is entitled to the appointment of commissioners to adjust the time and manner of flowing, and to assess the yearly damages which have been, and which may hereafter be occasioned by the respondents' dam, as the statute requires.                    *Defendants defaulted.*

TENNEY, C. J., and APPLETON, HATHAWAY, and GOODENOW, J. J., concurred.