Bradbury, J.
The contention between the parties to this action is over their respective rights to and in Chippewa Lake, a non-navigable body of water in Medina county, in this state, having an area of about four hundred acres, oval in form, though its extension from north to south is about twice as great as that from east to west. It is true that the plaintiff in error claims that the waters of the lake have subsided by'reason of the deepening of the channel of its *346 natural outlet, whereby a narrow strip of land entirely around the lake has been recovered, but as this claim is not sufficiently supported by the agreed statement of facts to require any consideration of the principles or authorities upon which he founds his claim "to title thereto, it will not be further noticed in the.decision of the cause. ■
The lake is situated in the Western Reserve lands, and upon the division of the lands of tire Connecticut- Land Company was, together with a body of land entirely surrounding it, allotted to Samuel Fowler and three others, and which by sundry conveyances and certain proceedings in partition became the property, in fee simple, of Samuel Fowler and James Fowler as early as the year 1815, to whom all the parties to this proceeding trace title. By the conveyances and proceedings above noticed, the title to the lake, as well as the title to the lands enclosing it, vested in the Fowlers, if it is susceptible of private ownership, which we think it clearly is. Bristow v. Cormican, 3 App. Cas. 641, 652. “ A lake which -is not really useful for navigation, although of considerable size compared with ordinary fresh water streams, may be private property.” Gould on Waters, Section 83; Ledyard, v. Ten Eyck, 36 Barb. 102; Hoggy. Beerman, 41 Ohio St. 81. Many other authorities could be cited in support of this proposition, but it is too well settled to require it to be done, even if controverted, which it is not in this action, although material to its determination.
It is agreed that, from an early period in the history of the state, hunters and fishermen, without license, resorted at will to the lake to hunt and fish, and that for more than forty years the public has had free access to it for boating, hunting and fishing. It is not readily perceived how this early and continued custom can be said to cast any material light upon the intention of the parties in respect of the deeds by which the lands around the lake were from time to time conveyed; it can only be material, therefore, as tending to show a dedication of the lake by its owners to the public, and a consequent extinguishment of their private property therein. These facts may constitute a link in *347 the chain of evidence necessary to prove a dedication of the lake to the public, but fall far short of establishing that fact. In truth, when consideration is given to the early customs of the people of this state in this respect — their well-known habit of hunting and fishing upon all lands and waters where fish or game might be found, irrespective of their ownership, or whether enclosed with fences or not — it is apparent that this class of evidence ought to be received and weighed with extreme caution as proof of a dedication to such uses. Private owners are not to be deemed to have devoted their property to uses of this kind simply because they interposed no objections to their neighbors, or even to strangers, hunting and fishing upon it; other circumstances must appear manifesting that it was his intention to do so. Dedication depends upon the intention of the owner to devote his lands to a public use and should be made to appear clearly and satisfactorily. 5 Am. & Eng. Ency. of Law, 400-401; Smith v. State, (N. J.) 712; Wash, on Easements, 209.
Here the owner did no act indicating an intention to devote the lake to the use of the public; it does not even appear that the owner had any knowledge that the public was using it in the manner that the agreed statement shows it to have been, in fact, used; and as dedication by parol, or in pais, acts by way of estoppel on the proprietor, used by the public unknown to him, can have no appreciable probative force to establish a dedication against him.
The lake, as we have seen, being susceptible of private ownership, and having been allotted to the Fowlers, or to them and others whose title they obtained, upon the division of the Western Reserve lands, and not having been dedicated to the use of the public, passed by the deed made by the Fowlers August 11, 1876, to Ainsworth and McClure, under whom the plaintiff derives title, unless it had already passed to some, or all, of the purchasers of the lands surrounding the lake by virtue of the prior deeds of the Fo'wlers made to such purchasers. This depends upon the descriptions in those deeds and the rules of law that apply to conveyances of lands bounded upon non-navigable inland *348 lakes. By a series of deeds, the first of which bears date of October 16, 1823, and the last, of January 24, 1868, the Fowlers conveyed all the lands that surrounded the lake to various parties, under which the same are now held, and such parts of the lake as may have passed by virtue of these conveyances could not, of course, have been conveyed by a subsequent deed of the Fowlers under which the plaintiff in error derives title; and it is, therefore, of the first importance to ascertain what those conveyances, in fact, include, which necessitates a construction of their respective descriptions.
These descriptions may be divided into three classes. In the first class are two deeds, one from James Fowler et al. to Delanson De Forrest, the other from James Fowler and wife to Fred B. Chamberlain, wherein the lake itself is made one boundary of the land thereby conveyed; in the second class are four deeds, one from James Fowler to Catharine and Sally Trump, one-from James Fowler to Charles Wheeler, one from James Fowler to William Walter, and the other from James Fowler to Charles Wright, wherein the margin of Chippewa lake is made either a corner or one of the boundary lines of the lands conveyed by them respectively; while in the third class are two deeds, one from James Fowler et al. to Abraham Fritz, the other from James Fowler et al. to Conrad Snyder, in which the lands conveyed are described by metes and bounds only, no reference whatever being made to the lake.
The rule that lands, one boundary of which is a navigable river running through this state, extend to the middle of the stream subject to easement of navigation, was laid down by this court as early as the year 1828. Gavit v. Chambers et al., 3 Ohio 496. The same rule was applied to calls in a survey bounding lands upon a non-navigable stream, shortly thereafter, Benners' Lessee v. Platter et al., 6 Ohio 505; since which time the doctrine therein announced has been firmly maintained by this court. Curtis v. The State, 5 Ohio 324; Lamb v. Rickets, 11 Ohio 311; Walker v. Board of *349 Public Works, 16 Ohio 540; June v. Purcell, 36 Ohio St. 396; Day v. R. R. Co., 44 Ohio St. 406.
The rule, however, is otherwise in respect to calls in a deed bounding the lands conveyed by it on the waters of Lake Erie. Sloan v. Biemiller, 34 Ohio St. 492. And in the case of lands bounded on the Ohio river the clear tendency of judicial opinion in this state is to limit the title of the riparian proprietor to law-water mark. Benners’ Lessee v. Platter, 6 Ohio 508; Lessee of Blanchard v. Porter et al., 11 Ohio 138, 142; Booth v. Hubbard, 8 Ohio St. 247; but the effect to be given to a call in a deed that makes a non-navigable lake one boundary of the lands conveyed by it has not heretofore received the attention of this court. The authorities upon the question are in conflict, and seem to be incapable of reconciliation. In some of the states, and in England, the rule is to limit the operation of the conveyance to the water edge. Gould on Waters, sec. 80, p. 155. Bloomfield v. Johnston, Jr., R. 8 C. L. 68; Bradley v. Rice, 13 Me. 198; Wood v. Kelly, 30 Me. 47; Wheeler v. Spinola, 54 N. Y. 377.
In other states, notably Indiana and Michigan, the contrary rule may be considered as established. Ridgway v. Ludlow v. 58 Ind. 248; Stoner v. Rice, 22 N. E. Rep. 968; Clute v. Fisher, 65 Mich. 48.
In this conflict of authority we are at liberty to adopt such rule on the subject as best comports with the presumed intention of the parties, a sound public policy, and the analogies of the rules in force in this state respecting boundaries upon running streams. It may be conceded that the numerical weight of authority supports the rule that a call in a deed making a non-navigable lake a boundary, only passes title to tire land to low-water mark; but, be that as it may, no solid ground is readily perceived for limiting, in that case, the deed to the waters’ edge, and in the case of a running stream, extending its operation to the centre or thread thereof ; and in'this state, where the rule is so firmly established that a boundary on a running stream carries the land to the middle, or thread thereof, principles of analogy afford strong grounds for applying it to non-navigable lakes. The main *350 reasons for the rule in one case apply equally to the other. The existence of “ strips or gores ” of land along the margin of non-navigable lakes, to which the title may be held in abeyance for indefinite periods of time, is as great an evil as are strips and gores of land along highways or running streams ; the litigation that may arise therefrom after long years, or the happening of some unexpected event, is equally probable, and alike vexatious in each of the cases, and that public policy which would seek to prevent this by a construction that would carry the title to the centre of a highway, running stream, or non-navigable lake that may be made a boundary of the lands conveyed, applies indifferently, and with equal force, to all of them. It would seem, also, that whatever inference might arise, from the presumed intention of the parties, against the reservation of the land underlying the water, would be as strong in one case as in either of the others.
That practical difficulties in the application of the rule may arise where the lake is so nearly round that it cannot be said to have any length as distinguishable from its breadth, or when the side lines of the respective parcels of land bounding on the lake approach it in such direction that if they should be extended to the centre thereof, they would cross each other is apparent.
The latter difficulty is not at all unusual in the case of lands bounding on running streams, but does not prevent the application of the rule. 3 Wash. 459, star note ; Angelí on Water Courses, Sec. 55,. where the subject is learnedly discussed by those able authors, and this difficulty overcome. Whether there are in Oliio non-navigable lakes of such shape that no length can be affirmed of them does not appear; if there are any such, and the rule applicable to running streams and to non-navigable lakes distinctly longer than they are wide, cannot be applied to them, other appropriate rules must be adopted which, in the light of all the circumstances, may be regarded as effectuating the intention of the parties, and are consistent with public policy; one main object in all cases *351 of this kind being to adopt and apply such rules as will accomplish those important ends.
Whatever difficulties may be conjectured as liable to arise in possible cases to the application of the rule we have adopted, in fact none do arise in the case before us, for Chippewa Lake is distinctly longer than it is wide, and a prolongation to its centre of the side lines of the respective parcels lying along its sides will not cause them to cross each other. The rule, of course, excludes those lands which merely touch the end of the lake and do not at all extend along its sides.
This rule, however, is applicable • to but two of the conveyances, that to Delanson DeForrest and that to Fred B. Chamberlain. While, if the parties to a deed make a running stream, a non-navigable lake, or a highway, one boundary of the lands conveyed by it, public policy and the presumed intention of the parties will extend the line to the middle of such monument, yet it is competent for them to limit the conveyance to the side of the highway, the top of the bank of the running stream or to the edge of the water of the lake. Lessee of Blanchard v. Porten et al., 11 Ohio 138; Lough v. Machlin, 40 Ohio St. 332; and the question is whether the parties to the other deeds conveying the land surrounding Chippewa Lake have not done so. As has been shown in four of the conveyances of the Fowlers, of the lands bordering on the lake, the “ margin ” of the lake is made a boundary or corner instead of the lake itself. “ Margin of the lake ” is a term of unequivocal import, meaning the line where the earth and water meet around the lake ; by the use of these words the parties have declared their intention to make, not the middle, but another part of the lake — the edge of the water — the boundary line. No other construction can be given to the words the parties themselves have chosen, without doing violence to. their meaning; and an intention contrary to the one expressed by the very words selected by the parties themselves cannot be presumed. Lessee of McCullock v. Aten, 2 Ohio 308; Lamb v. Rickets, 11 Ohio 311; Hopkins v. Kent, 9 Ohio 13; Gould on Waters, Sec. 199.
*352 In the remaining deeds from the Fowlers to the lands around the lake the lands were described by metes and bounds, no mention of the lake being made. In descriptions of this class only the lands within the bounds pass. “ When lands are granted by metes and bounds, all the area within those bounds, and no more, passes.” Lockwood et al. v. Wildman et al., 13 Ohio 430. Indeed, where the parties have by their deed enclosed the land by agreed lines, without any reference whatever to adjacent natural objects, it is difficult to conceive of a principle that would extend those lines to include those natural objects, however convenient they might be to the enjoyment of the land actually conveyed.
From the construction we have given to the descriptions contained in deeds made by the Fowlers conveying away the several parcels of land that surround the lake, it follows, that the deeds made to Delanson DeForrest and Fred B. Chamberlain make the centre of the lake one boundary of the tracts conveyed to them respectively, and that the other deeds cany title no further than the eclge of the water, and that therefore the title to all the bed of the lake, except what was covered by the DeForrest and Fred B. Chamberlain deeds, remained in the Fowlers, and by their deed of August 11, 1876, was conveyed to D. H. Ainsworth and A. W. McClure, and is now owned by the plaintiff in error by virtue of mesne conveyances from Ainsworth and McClure, as set forth in the agreed statement of facts.
It also follows, that as the defendant Andrews claims title under conveyances, which constitute the margin of the lake a boundary, he has no title to any portion of the bed of the lake, nor has the defendant John Nye a title to any portion thereof; for the reason that although the deed from the Fowlers to Delanson DeForrest, and the mesne conveyances from the latter to J. H. Barrett, conveyed title to the centre of the lake, yet the deed from J. H. Barrett to Levi Nye, the lessor of defendant John Nye, limits its operation to the edge of the lake by expressly making the margin thereof its boundary on the side, or end, of the tract abutting thereon. We there *353 fore hold that the plaintiff in error is the owner in fee simple of all that part of the bed of Chippewa Lake not covered by the deeds made by the Fowlers to Delanson DeForrest and Fred B. Chamberlain, and that those two deeds cover such parts thereof as are enclosed by a prolongation to its centre, of those lines of the description that approach the sides of the lake.
The bed of the lake being private property the public has no right to fish in, and boat upon, its waters ; nor have the defendants the right to engage in the business of letting for hire boats and fishing tackle to such portions of the public as may resort to the lake to boat and fish for their pleasure and recreation. That the latter right is one that can be acquired by prescription may be admitted, but the facts agreed upon fall short of establishing it by that method, even if that contention was maintained on behalf of the defendants in error, which we do not understand is the fact, in view of the arguments presented in the able brief of their counsel.
The agreed statement of facts in respect to this question is as follows:
“ The defendants and their grantors have for more than forty years occupied continuously their respective lands to the water in all its variations, and have enjoyed the free use of the water in connection with their lands for the purpose of watering cattle, washing sheep, boating and fishing, and without license or consent from any one.”
This does not show that the enjoyment was adverse or under any claim of right. Both of these elements must exist, according to the current of authority, in connection with the prescribed period of enjoyment to create a right by prescription. Washburn on Easements, 150; Tootle v. Clifton, 22 Ohio St. 247.
However, conceding that these are not necessary elements of prescription, and that the defendants had acquired a prescriptive right to water cattle, wash sheep, boat and fish in the lake, yet it by no means follows that because they may do these things, that they may also erect docks extending into the water and embark in the business of keeping boats *354 and fishing tackle to let for hire to pleasure seekers who may-resort to the lake to boat and fish for recreation upon its waters. The two lights are clearty distinguishable from each other; and the contention is over the latter right only, in respect to which the agreed statement of facts, while it states that the defendants are exercising it, is silent as to the duration of their enjoyment thereof, and therefore does not establish the right by prescription.
That a riparian proprietor by virtue of his ownership to the edge of the water of a private stream or lake has access to, and the right to use the water for domestic and agricultural purposes, is not controverted by the plaintiff in error. Such use may fairly be considered as within the presumed intention of the parties.
That the lake is valuable for the purpose of gathering ice from its frozen surface appears from the agreed statement of facts, and the right of the defendant to gather it was asserted on one side and denied by the other in the course of the argument, but the question is not made by the parties in their pleadings and therefore cannot be noticed in the decree.
The agreed statement of facts shows that the defendant Nye is insolvent, and that the financial condition of Andrews doubtful; but aside from this, and were they both solvent and fullj'- able to respond to any damages that might be recovered against them in actions of trespass, yet, it is apparent from the whole record that such actions would not afford an adequate remedy for the violations of the rights of the plaintiff in error in the past; and those threatened in the future were, and are, during certain seasons of the year of daily, if not of hourly, occurrence under the claim of a right to do so : besides the injury resulting from each separate act would be trifling, and the damages recoverable therefore scarcely equal to a tithe of the expense necessary to prosecute separate actions therefor.
It follows from the holding of the court respecting the effect to be given the several descriptions in the conveyances made by the Fowlers and others to the various parcels of land that surround the lake, that neither of the defendants *355 has shown a right to erect docks and let to hire for use thereon boats and fishing tackle; it also follows that in so far as these acts affect those portions of the lake to which the title of plaintiff does not extend, he is not entitled to relief against them; but is entitled to have so much thereof as his title covers protected from those unwarranted violations. There should be a decree, therefore, finding, that as against the defendants herein, the plaintiff in error is the owner in fee simple and entitled to the exclusive possession of all the lands underlying the waters of Chippewa Lake except those parts thereof that, according to the rules herein-before laid down, were conveyed by the Fowlers to Delanson DeForrest and Fred B. Chamberlain, and restraining the defendants from letting to hire either boats or fishing tackle, to be used on the water overlying the lands so found to belong to him.

Judgment accordingly.