Terre Haute and Indianapolis Railroad Co. *v.* Zehner.

No. 1,854.

## TERRE HAUTE AND INDIANAPOLIS RAILROAD CO.
## *v.* ZEHNER.

**ADVERSE POSSESSION.—** *Mill-Privilege.—* *Complaint.*— In an action for obstructing water, which flowed to plaintiff's mill, a complaint which alleges that the right to overflow certain land with the water which defendant obstructed, and to use the water, was acquired by a continuous adverse use by the plaintiff and his grantors for a period of more than 20 years, is sufficient on demurrer to show a cause of action.

**SAME.—***Prescriptive Easement.*—The right to use the water from the lands of another, or to overflow the land of another, may doubtless be acquired by prescription, but such right does not ripen into a fee-simple title, but at best only into an easement.

**SAME.—***Easement.*—A prescriptive easement to overflow lands and use the water therefrom, is not shown by proof that the land was used for that purpose, where it is not shown that the rights of the owner were thereby infringed.

**SAME.—***Easement.*—The construction of a culvert through the embankment of a public highway and the use of the water through the same, will not give an easement by prescription where it does not interfere with the rights of the public but rather aids in maintaining the highway by preventing its overflow.

From the Marshall Circuit Court.

*J. G. Williams, H. Corbin* and *R. B. Oglesbee,* for appellant.

*C. Kellison* and *S. Parker,* for appellee.

REINHARD, J.—The first alleged error assigned by appellant's counsel relates to the overruling of appellant's demurrer to appellee's complaint.

Omitting the mere formal parts, the complaint is as follows:

"Said plaintiff, for amended complaint, and by
VOL. 15—18

leave of court first obtained, complains of said de- fendant and says, that the defendant is a corporation, duly organized under the laws of the State of Indiana, under the name of the Terre Haute & Indianapolis Railroad Company, and that said defendant company now is, and for several years last past has been, operating, among others, a line of railroad, running through the county of Marshall, in said State, which line of railroad was built and constructed under the name of the Terre Haute & Logansport Railroad; that on or about the —— day of October, 1891, and for more than twenty years prior thereto, the plaintiff was the owner, in fee-simple, and now is such owner, of certain real estate in Marshall county, Indiana, and was, and is, the owner of a mill-dam thereon, and, in connection with said realty, said plaintiff was, and is, the owner of a certain water-power and mill-privilege, and of the right to overflow certain lands covered and affected by the pond and reservoir created by said dam, which mill-pond, dam, and water-power is situated in West township, in said county; that on said realty, and in connection with said mill-dam and water-power, the plaintiff was, and is, the owner of a certain flouring mill, at and near the village of Sligo, in West township, aforesaid, which flouring mill was, until the commencement of the grievances, hereinafter set forth, run and propelled by said water-power, and said plaintiff says that said flouring mill has been run and operated by the plaintiff and his lessees, as a flouring mill, for a period of nearly thirty years prior to the —— day of October, 1891, aforesaid; that plaintiff's right to overflow a portion of the land affected by the back-water of said dam, and covered by said mill-pond, was acquired by plaintiff and his grantors by grant and contract, and his right to overflow the remainder of the lands affected by said mill-dam, and

covered by said mill-pond and reservoir, was obtained by adverse user by plaintiff and his grantors, as hereinafter set forth, and plaintiff says that plaintiff's right to overflow the lands and to use the water by drawing it through a culvert at the point and in the vicinity where the right-of-way of said Terre Haute & Logansport railroad crosses said mill-pond, as hereinafter set forth, was acquired by adverse use by plaintiff and his grantors, as hereinafter set forth; that for more than twenty years prior to the —— day of October, 1891, the plaintiff and his grantors have asserted and exercised the right to maintain said mill-dam and to overflow the lands covered and affected thereby; (except such of said lands as plaintiff acquired the right to overflow by express grant), that plaintiff has actually maintained said mill-dam at the same height and maintained the same head of water in said mill-pond, subject to the temporary diminution thereof by reason of use, and has exercised said right to the extent that he was enjoying it, on said —— day of October, 1891, openly, adversely, notoriously, continuously and uninterruptedly for more than twenty years before said date, as aforesaid; that said mill-privilege and water-power, and the pond and reservoir created by said dam, which dam is located across a natural stream of water, consists principally of several lakes communicating with one another, extending in a chain from east to west through section nineteen, in township thirty-three north, range two east, and sections twenty-four, twenty-three, and twenty-two, in township thirty-three north, range one east, all in said county and State ; that said pond and reservoir is about three and one-half miles in length, and is in its entirety known as Twin Lakes; that said mill-privilege, water-power, and the right to overflow the lands affected by said dam, was,

at the time and immediately before the commission
of the wrongful acts of the company, hereinafter men-
tioned, of the value of $8,000.00; that the line of rail-
road operated by the defendant company, in Mar-
shall county, as aforesaid, crosses plaintiff's mill-pond
at a distance of about two miles from plaintiff's said
mill-dam and flouring mill; that about one-half of
said pond and reservoir, in surface area and capacity,
lies on each side of said railroad; that the plaintiff be-
came the owner of all of said mill property in the year
1865; that at that time, there was a large and com-
modious culvert under and through the embankment
of a certain public highway that crosses said mill-
pond at or about where the line of railroad operated
by the defendant company now crosses said mill-pond;
that at said time said culvert was near the south end
of said highway embankment, and near to the high
bank of said Twin Lakes, and was so located as to be
affected by and partially filled up by the washing
from the high banks near it, making it necessary to
clean said culvert frequently; that said culvert was
about three and one-half or four feet wide and four
feet or more in depth, and constructed sufficiently
low, when kept clean, to admit of a flow of water
therein to a depth of three feet or more in ordinary
stages of water, and to a depth to admit of so free a
passage for the water that the level of said mill-pond
was the same on each side of said highway embank-
ment; that plaintiff was enabled, by reason of this
condition, to draw the water from that portion of the
reservoir lying east of said embankment down to the
bottom of said culvert, and to lower said reservior on
the east side of said embankment about three feet, in
ordinary stages of water; that a few years after the
plaintiff became the owner of said flouring mill, mill-
dam, and mill property (which was in the year 1865, as

aforesaid), he, for the purpose of avoiding the necessity for frequent cleanings of said culvert, moved the same from the south end of said highway embankment to near the center of said embankment and mill-pond; that the culvert so constructed by him was of no greater depth or capacity than was the old one, and plaintiff says that said latter culvert was wide and deep enough to admit of a flow of water therein, and did admit of a flow of water therein, so that plaintiff could draw the water from that portion of the pond lying east of said embankment down some three feet or more below the ordinary stages of water; that the same level was maintained on each side of said embankment; that plaintiff asserted and maintained said culvert at the depth to which it was originally constructed by him, as aforesaid, under claim of right, adversely, openly, notoriously, continuously and uninterruptedly, for more than twenty years prior to the —— day of October, 1891, when it was filled up and obstructed by the defendant company, as set forth; that at the time said Terre Haute & Logansport railroad was built, which was in the year 1883, the road of said company was carried over said pond on a high trestle of timbers, and in such a manner as not to interfere with the culvert constructed by plaintiff, or with plaintiff's use and enjoyment of said mill-pond and water-power, but plaintiff says that on or about the —— day of October, 1891, the defendant company, which was then operating said line of railroad, filled up said culvert and trestle with earth and other material, and constructed an earth embankment in place of said trestle, extending entirely across plaintiff's said mill-pond from bank to bank; that, at the same time, the defendant company moved the location of said highway embankment some forty or fifty feet farther to the east, without the knowledge or con-

sent of the township road authorities, and without knowledge or consent of plaintiff, and without any legal proceedings whatever, and at the same time wrongfully, negligently and unlawfully filled up and entirely obstructed said culvert, wholly preventing the passage of water through the same, without the knowledge or consent of the plaintiff, and without having first tendered or paid to him any damages or compensation for the taking of his property and for the injury to his water-power; that at the same time the defendant company, pretending to make provision for the flow of water under and through said embankment , which embankment was continuous with the embankment of said highway, as changed by the defendant company, wrongfully, carelessly, negligently, and unlawfully constructed a culvert at the south end of said railroad and highway embankment, and under and through the same, said culvert being one hundred feet or more in length; that the bottom of the culvert so constructed by the defendant company, and as now maintained by it, was, and is, some two and one-half feet higher than was the bottom of either of said former culverts, and that it consists of an iron pipe about thirty inches in diameter, set in a massive structure of masonry, and that the earth embankment was constructed, and is now maintained, by the defendant company, so as not to admit of the passage of water from the east side of said embankment to the west side thereof, except to a limited extent; that the capacity of said culvert is not more than one-half that of either of said former culverts, even if it were placed at the same level as said former ones; that the water from the east side of said reservior can only reach the culvert, so constructed by the defendant company, by passing an open ditch running along the

high banks on the south side of said mill-pond; that said ditch is frequently partially filled up by sediment and the washing from said banks, thereby further retarding the flow of water from the east to the west sides of said embankment; that prior to the construction of said culvert by the defendant company, and the filling up of said former culvert and trestle, as aforesaid, the plaintiff was enabled, by reason of said former culverts, to enjoy the full power and capacity of said water-power throughout its entire extent, but plaintiff says that by reason of the filling up of said former culvert and the construction of the culvert made by the defendant company, and the making of said embankment, the water in plaintiff's said reservoir lying east of said railroad embankment was, and is, penned up and set back, and the plaintiff is thereby rendered unable to use and enjoy the water in the east part of said mill-pond, all of which is the result of the negligent, careless, wrongful, and unlawful acts of the defendant company, as aforesaid; that plaintiff is, by reason thereof, unable to use and utilize scarcely any of the water of said mill-pond lying east of said embankment, and that when said new culvert and ditch is kept open and clean to the bottom thereof as constructed by the defendant company, it is impossible, in ordinary stages of water, to maintain the same level of water on both sides of said embankment, but that in ordinary stages of water, when said water-power is being used for grinding, the level of that portion of said mill-pond lying east of said embankment stands from nine to twenty inches higher than the level of said pond immediately west of said embankment, and plaintiff is unable to draw the water east of said embankment down to within two feet as low as he was able to do before the defendant company filled up and

obstructed the culvert used by plaintiff, as above set forth; that the culvert constructed by the defendant company, as aforesaid, and said earth embankment are permanent and massive structures; that by reason of said wrongful, careless, negligent and unlawful acts of the defendant company, as aforesaid, plaintiff's said water privilege and water-power have been and are permanently injured, impaired and diminished in value, capacity, and power, and almost wholly destroyed, and plaintiff has been damaged thereby in the sum of $6,000.00. Wherefore plaintiff demands judgment for $8,000.00 damage, and for all other proper relief."

The appellant insists that this pleading utterly fails to state a cause of action in favor of appellee, and that consequently the court erred in overruling the demurrer.

After a full consideration, we have concluded that the complaint is sufficient on demurrer. The general allegations as to appellee's title by prescription are, perhaps, sufficiently broad to admit of proof of appellee's rights acquired in that manner. Assuming, therefore, that the complaint is sufficient, and that no error was committed in overruling the demurrer, we proceed to determine what we regard as the vital question in the case.

The appellant has also assigned as error the overruling of the motion for a new trial, and in this connection it is insisted that there is not sufficient evidence to sustain the verdict.

Before the appellee can recover damages of the appellant, he must make it appear:

1.   That he is entitled to the use of the water on the east side of the embankment.

2.   That he has a right to draw the water through the culvert in the embankment.

3.  That the appellant has deprived the appellee of the enjoyment of such right, in whole or in part.

Assuming that the last proposition is established by the evidence, the question arises, whether the facts proved are sufficient to make out the first and second propositions.

Before it can be held that the appellee has a right to take the water on the east side of the bank for the purpose of running the mill, it must be shown, either that he is the owner of the land covered by the water, or that he has an easement to draw water from or flow water over such land.  The appellee's contention is, if we correctly understand his counsel's position, that he has acquired a fee-simple title to said land by reason of adverse possession for more than twenty years.

It does not appear, from the evidence, that the appellee ever made any use of the land in question, except for the purpose of flowing water over the same and drawing water from the same to run his water-mill.  It is a well-known legal rule, that before there can be any presumption of a grant of the fee-simple, or even an easement, the party claiming the same must show that the exercise of the privilege was an active interference with the rights of the dominant owner in such a manner as to entitle the latter to legal redress, to which he might have resorted; but, having failed to assert the same, it must be deemed that there was, on his part, an acquiescence in the validity of such adverse claim.

The following authorities all more or less serve to illustrate and sustain the legal propositions above enunciated.  *Holsman* v. *Boiling Spring, etc., Co.,* 14 N. J. Eq. 335; *Polly* v. *McCall,* 37 Ala. 20; *Tinkham* v. *Arnold,* 3 Me. 120; *Gleason* v. *Tuttle,* 46 Me. 288; *Trustees, etc.,* v. *Youmans,* 50 Barb. 316; *Mitchell* v.

*Parks,* 26 Ind. 354; *Palmer* v. *Wright,* 58 Ind. 486; *Hill* v. *Hagaman,* 84 Ind. 287; *Sims* v. *City of Frankfort,* 79 Ind. 446; *McCardle* v. *Barricklow,* 68 Ind. 356; *Frankboner* v. *Corder,* 127 Ind. 164; *Nowlin* v. *Whipple,* 120 Ind. 596; *Smith* v. *Miller,* 11 Gray (Mass.), 145; *Wood* v. *Kelley,* 30 Me. 47; *Nelson* v. *Butterfield,* 21 Me. 220; *Roundtree* v. *Brantley,* 34 Ala. 544; *Hanson* v. *McCue,* 42 Cal. 303; *Hoy* v. *Sterrett,* 2 Watts (Penn.), 327; *Wheatley* v. *Baugh,* 25 Pa. St. 528; *Black* v. *O'Hara,* 54 Conn. 17; Washburn Easements, etc., 4 ed., pp. 152–154, 197, 198; Angell Watercourses, 7 ed., sections 216, 218; 19 Am. and Eng. Ency. Law, p. 6, *et seq.*

The right to use the water from the lands of another, or to overflow the land of another, may doubtless be acquired by prescription, but such right does not ripen into a fee-simple title, but at best only into an easement. Do the facts establish such an easement?

In the case under consideration, it is not made to appear how the use of the water east of the embankment, or on any portion of the *locus in quo,* for that matter, tended in any way to the injury of the proprietors of the land on which it stood or over which it flowed, nor is it shown who such proprietors were, and in what manner they yielded their assent to, or acquiescence in, the adverse use and possession of such land. As we have just seen, it is not sufficient to establish title by prescription, that there should have been a constant user during the statutory period, but such user must have been adverse to the right of the real owner. The user could not be adverse, however, unless it in some way interfered with and encroached upon the rights of such owner. It is not shown that there were any privileges of a riparian or

other nature infringed by such user. For aught that appears, the drawing of the water from the land may have been a benefit to the same, instead of an injury. Not even the act of backing the water by the mill-dam so as to overflow the land is necessarily injurious to the same, in and of itself. Whether or not it would be detrimental to the land would depend upon the condition thereof, whether tillable, or otherwise, the area occupied by the water when backed up, and, perhaps, upon other contingencies. Of course, the appellee had the right to show adverse possession by circumstantial evidence, but enough must be proved to show that the plaintiff's use and occupation was such an injury as would give a right of action to the owner of the fee, otherwise there could be no adverse possession. The evidence, at most, only shows that the appellee was permitted by the owner or owners of the land to enjoy the use of the water without objection; and, as he has failed to prove facts, such as would establish an adverse enjoyment of the use and occupation of the land to the injury of the owners thereof, the evidence totally fails to disclose any right or title in the appellee by prescription or otherwise. *Davis* v. *Cleveland, etc., R. W. Co.*, 140 Ind. 468.

As to the use of the culvert, it appears that the same was constructed through the embankment of a public highway, over which the appellant's railroad was afterward constructed. How the first culvert came to be there, is not shown. It appears that appellee, for his own convenience, stopped up the first culvert, and constructed a second one, through which he continuously flowed the water until interfered with by the appellant. The construction of the culvert through the embankment, and the use or enjoyment of the same by the appellee, was not an interference with the rights of the public, or of any one,

so far as the facts proved disclose. On the contrary, it rather aided the public in maintaining the highway by preventing its overflow. Its use was therefore not inconsistent even with the rights of the public in such highway. Had the appellee placed an obstruc- tion in the culvert, or interfered with the flow of the water of the same, so as to cause it to rise above the embankment, there might have been an injury to the highway, and a consequent right of action by the pub- lic authorities against the appellee. But even the fail- ure to assert such right of action on the part of such officials could not have been the means of giving the appellee any title by prescription, for as to the govern- ment, or a subdivision thereof, there can be no laches imputed by its failure to act. Angell Watercourses, section 254; Elliott, R. and S., p. 665, *et seq.*

As we view the matter, the appellee has not shown any right of action by his evidence, and the court erred in overruling the motion for a new trial.

Judgment reversed.

Filed January 21, 1896; petition for rehearing overruled May 8, 1896